TUCKER, Judge.
The case was shortly this:
Mathew Franklin Bowne & Co., on the Sth of July, 1795, gave their note payable to Robert 'Fuller, or order, sixty days after date, for ,£210, value received. This note, Fuller assigned to D. W. Scott, the defendant; and, by him, it was assigned over to the plaintiffs Bronaugh &,Co. Payment was demanded Of the drawers, on the 16th of September; 1795; eight days after the note became due;' and, not being paid, it was protested, at the instance of Bronaugh & Co. On the 8th of September, Scott wrote a letter to Bronaugh & Co. concerning this note, and concludes with advising them to satisfy themselves about the ability of the drawers to pay the bill, and take such steps as may be most advisable for recovery of their demand. The plaintiffs lived at Aquia, on the post road from Alexandria to Fredericksburg. On the 17th of September, 1795, the plaintiffs instituted suit against the drawer and endorser, jointly, (in which special bail was entered for both,) in the Dumfries district court. The proceedings in this suit, were dilatory on the part of the plaintiffs ; and, in October 1797, it was discontinued. On the same day they sued out their writ in this action.
The special verdict further finds, that, between the 20th of May, 1795, (six weeks before the date of the note,) and *the 8th of September, (the day it became due,) thirty-eight protests were made for nonpayment by Bowne & Co. That, on the-day of- 1796, Mathew Bowne & Co. took the oath of insolvency, in a suit instituted, (by whom does not appear,) in the county court of Fairfax. (These findings are mere evidence. ) And that, on the-daj of March, 1796, and at the time of the institution of this suit, to wit, on the 30th of October, 1797, the drawers were insolvent.
If it should appear from this special verdict, that the plaintiffs were not entitled to recover against the defendant, upon the-facts therein found, it will be unnecessary to examine the pleadings.
According to the principles which I have advanced in the case of Hooe v. Wilson, (ante, 61,) the plaintiffs must shew, that *890 they have used due diligence in order to receive, or recover the money due upon this note from the drawers, before they can resort to the endorsers: This principle having been established in the case of Love v. Lee, 1 Call, 497.
The record found by the jury does not offer such proof.
1. It does not shew a judgment. Which in the case of a suit actually brought against the drawer of a promissory note is absolutely necessary, in order to charge the endorser: And even, if it had shewn a judgment, that would not have been sufficient, without shewing an execution unsatisfied. The bringing the suit, and taking the defendant upon the writ, precludes all evidence of insolvency, arising aliunde. No supplementary evidence, not apparent in the record, can, I apprehend, be admitted to supply the want of that evidence, which a judgment and execution against the drawer, returned unsatisfied, either by taking the goods, lands, or body of the defendant, could alone shew.
But, even, if they had proceeded to judgment, it might have been a question, Whether, as they brought a joint action against both drawer and endorser at the same time, such a judgment could have been admitted as evidence in this cause, to charge the endorser separately?
For that judgment, had the suit been prosecuted so far, might, I presume, have been pleaded in bar to this action. So that, although the merits of the judgment and its legality could not have been collaterally decided upon, whilst it remained in force, yet, if it could be pleaded in bar of this action, it would seem hard to suppose it might be given in evidence in support of it.
But, if it could not have been pleaded in bar of this action, because it might be thought not to be a recovery upon the same note; neither could it be given in evidence in support of this action, for the same reason. .
I have said before, that the bringing of the former suit, and the taking the drawer upon the writ, precludes all evidence of insolvenc}', which may arise aliunde. And this position I hold to be correct: for if the plaintiff had proceeded to judgment in that suit, and had sued out execution thereupon, against the body, and he had been taken, and discharged under the insolvent act, this would have appeared as a part of the record : or, if he had been formerly discharged under the insolvent act by any other court, and in any other cause, and had moved the district court for a discharge upon that ground, and obtained it, this also would have appeared as a part of the record. And, if the debtor had been a bankrupt, either before action brought, or pendente lite; or even after judgment; it might, and I conceive ought to have been apparent upon the face of the record, either as a plea in bar, or as ground for his discharge from his imprisonment, if taken either upon mesne process or execution.
But it is urged, that the insolvency of the drawers is positively found by the jury in their verdict in this cause; and that being so found, the court will presume it was iiuly proved to them.
The jury have indeed found, that on the —■— day of March, 1796, Mathew Franklin Bowne & Co. were insolvent. Had they even named a day (which they have not done) it would only have proved their insolvency on that day, but not on any other day, before or after; for the finding of the *jury is confined altogether to a single day in March 1796. But not having named the day, that part of the verdict must be rejected for uncertainty, which the court cannot aid. Then again they find, that the drawers were insolvent at the institution of this suit. Now if we are to look into dates, to understand this verdict, we shall find that more than two years elapsed before this suit was brought, after the note had been protested for nonpayment. They might have been solvent the whole time, from the day of the protest to the day of bringing suit (for I throw the finding of insolvency, on the —■—■ day of March, entirely out of the question, by reason of its uncertainty), and then the question would be, Whether this finding offers any excuse for their not bringing suit against the drawers, in all that time? For the suit which was brought having been discontinued, which implies a neglect in the due prosecution of it; it is as if it had never been brought at all.
But it was insinuated, that the jury having found an insolvency on the-day of March, 1796; and at the institution of this suit, a continued insolvency must be presumed.
It is a ready answer to this, that if the jury had had evidence to that effect before them, it was very easy for them to have found the fact accordingly. That the finding an insolvency on two different days is, at most, only presumptive evidence of insolvency during the intermediate period: But this court cannot decide upon evidence only in a special verdict. And it was well observed at the bar, in avoidance of this presumption, that, in point of fact, mercantile men are frequently insolvent, and solvent again in the course of eighteen months. There is therefore no foundation for this presumption by the court, on the ground that a man who is once insolvent must continue so.
This part of the verdict then is, to my apprehension, too uncertain to be any aid, or'assistance, to the plaintiff. I have considered it, merely because some stress was laid upon it, at the bar.
*1 am therefore of opinion that the plaintiffs have neither shewn due diligence against the drawers, before the commencement of this action; nor any sufficient excuse for not instituting and prosecuting a suit, against them, ivith effect: and therefore that the judgment of the district court ought to be affirmed.
ROANR, Judge.
The general doctrines on this subject have been so often discussed, and so fully declared in this court; especially in the cases of Mackie v. Davis, and Barksdale v. Fenwick, that I cannot without repetition, and therefore need not, enter upon them, at this time. I refer generally to the decisions giving in those cases *891 and will endeavour to test the present case by them.
In the latter case, it is held as a general, though not an universal proposition, that the assignee of a note is bound to sue the maker. It is also clearly supposed, that his undertaking imposes an obligation on him, not only to sue in due time, but in a judicious manner. It would be absurd to say, that the assignee had used due diligence in suing, when although his suit was brought in time, it was such a suit as whereon it appears, primo intuitu, he could never recover. Suppose, for example, that in this case the action against Bowne & Scott had been an action of trespass, instead of as-sumpsit. That indeed ig a stronger case than the present, but the principle is the same.
In every instance, therefore, the jury, in their broad province of determining when due diligence has been used, are also to en-quire, Whether the suit instituted was a proper action? was one whereon the plaintiff could have recovered?
That province of the jury is now assigned to us by the special verdict; and we are bound to make the enquiry. In doing this, -we do not, in our appellate character, review the suit in question for the purpose of reversal; that action, if it had been carried to judgment, might, for any thing now done by us, be affirmed by the appellate court; but we are bound by virtue of the special verdict, as the jury were, to make the enquiry collaterally.
There is no question, in this case, but that it was proper for the appellant to bring a suit against Bowne. There was abundant reason to believe that his circumstances were bad; Scott himself seemed to impose the entire responsibility on the appellant; and there is no evidence that, at that time, an insolvency or other circumstances existed, which would excuse altogether from suing; but the complete answer is, that the appellant has admitted the propriety and necessity of bringing suit, by having, actually, brought one.
That suit was brought in due time, and indeed with much more rapidity than is usual: But I am sorry to be obliged to say, that that suit was a vain one; that it was not a judicious course of proceeding; and that a judgment could never have been recovered against Bowne thereon.
The declaration contains four counts; but only the first two apply to Bowne; the last two apply solely to Scott. The first count charges Bowne and Wilson jointly, on the custom of merchants: It says nothing of our statute, and proceeds as if the note had been a bill of exchange. In the case of Dunlop v. Harris, (ante, 16,) the other day it appeared from decisions, then quoted from the english books, that since the statute of Anne, although it has adopted the custom of merchants in relation to promissory notes, it is necessary to declare on the statute, and not on the custom of merchants. 7 Term Rep. 151. This necessity certainly exists much more strongly here, where our act professes not, and does not adopt those customs. JSTo recovery therefore could have been had against Bowne on this count: neither could there on the second count for money had and received ; because there is not that privity between him and Bronaugh, which would support the action. Dunlop v. Harris. The action then was vain and misconceived, and could never, had Bowne even continued solvent, have warranted a recovery against him.
It is very probable (though on this I give no opinion) that where an assignee has been diligent and judicious in suing, after circumstances may arise which might justify his dismissing *his suit; such circumstances for example as would have justified his not suing at all: But such after circumstances cannot cure a previous flaw in the plaintiff’s title'; cannot shew that he has used due diligence; when a neglect has already taken place, which must, forever, discharge the defendant.
The assignee undertakes, that he will, at no time, omit that diligence, and those measures, which the interest of the assignor requires him to pursue.
An effectual suit may more probably coerce a payment from the maker of the note, than a misconceived one; and a tenderness for the interest of the bail would operate more on the defendant in the former case, than in the latter. In the latter, the defendant and his bail must know, that he and they are in no danger of being ever compelled to pay the money. In the former the defendant might choose, if possible, to pay the debt rather than place his friend in a responsible situation. I shall pursue this subject no further; but it is certain that the interest of the assignor is lost sight of, when a defective, and erroneous action is instituted.
On this ground only, I am compelled, much against my wish, probably much against the justice of the case, to give judgment for the appellee. The appellant himself has committed no laches, and has been sufficiently diligent; but his counsel, by an injudicious course of proceeding, has injured him, and it is impossible for us to relieve him. I am therefore of opinion, that the judgment of the district court ought to be affirmed.
RL/HMING, Judge.
The material question, in the cause, is, Whether due diligence has been used by the appellants? And, to decide it, we must 'recur to the facts.
The note, upon the face, fell due on the 5th of September; and upon the 8th, being the end of the three days grace, the assignees, who lived thirty-three miles from Alexandria, the residence of the debtors, wrote to Scott informing him that it had not been paid. At which time 38 protests *had been made against the makers of the note for nonpayment of debts due to other people. Scott, who appears to have been fully apprized of the situation of the debtors, returned the letter, stating that he was prevented from sending the report of the committee, as he had been disappointed in receiving it; but had understood it was favourable; and that the appellants (who lived between Alexandria and Dumfries) had better satisfy themselves about it, and take *892 such steps as might be most advisable to recover the money. In consequence of this, the appellants proceeded to have the note protested; and brought suit upon it on the .17th of the month; which was as early as could reasonably be expected, considering the distance they lived from Alexandria, and the time it must necessarily have taken to negotiate the business, and retain counsel. That suit however being misconceived, in joining the makers and endorser together, was discontinued in October 1797, and the present a'ction brought, the makers having absconded without leaving any effects behind them.
Upon the first blush of the case, it appears that the affair's of Bowne & Co. had become desperate at the time the note fell due. For their notes had been again and again protested; a committee had been appointed to examine into' their situation; and Scott’, who had been enquiring about it, recommended, to the appellants, to satisfy themselves with respect to the result; and to take such steps as might be most advisable to recover the debt.' Thus leaving it to their discretion to pursue such means as their own judgment might dictate to be the best calculated to effect' the object. The assignees were, therefore, relieved, not only by the general' principles of law, but by the express act of Scott himself; from all responsibility, except for gross neglect; and there is nothing- of that kind in the cause.
It was said however, that, in some instances, the appellants were, in fact, negligent; and that what they did attempt, was so improperly commenced that it proved abortive. For although a quick suit against the makers of the *note was indispensable, the first'action was not only misconceived, but discontinued after-wards.
The answer to the first branch of the objection is, That the assignees employed a gentleman of eminence in his profession, and whom the law had declared qualified to bring the action; and if he fell into an error they were not to blame; for they had done all that could reasonably be expected of them; and if it failed of success, it was the misfortune of the assignor; not ■ the negligence of the appellants. But, independent of this, I am very far from thinking that a suit is necessary in every case; because there is no analogy, as was supposed in the argument, between the protest of a bill of exchange, and a suit upon the note.. For the original object of the protest .was to authenticate the demand by a testimonial, which would be conclusive at home and abroad, without the aid of other evidence, as that'might be difficult to be obtained: and therefore it was not necessary, at common law, upon an inland bill, because that could, like any'other matter, be proved by testimony in the country. The suit however stands upon a different footing ; for it is not conclusive, but prima facie, evidence only, in any case. Accordingly, although á judgment,and execution has been received as one, it never has been held to be the only, method of ascertaining the insolvency of the maker; which'may be as effectually established by other means. Thus absence out of the state without leaving any effects behind; or bankruptcy under the late act of congress, which took them away, it is admitted would be conclusive. Then why not a discharge under the oath of insolvency, which appears to me to stand upon the same principle? For, if the as-signee finds that the oath has been taken, and that the debtor has, in conformity to law, assigned all his effects to-the use of the prior creditor, for what purpose should a suit be brought to ascertain what is already established on record, and subject the assignor to the additional burthen of costs? Good faith is all that the law requires in'such cases. Therefore, when any probability exists that payment can be enforced *by means of a suit, it ought to be brought; but when it is certain that nothing can be obtained, it would be injustice to the assignor to commence an action. In that respect, it may be fairly said, that there is some analogy between the assignment of a note, and the endorsement of a bill of exchange. For the early resort to the endorser may enable him to secure himself, if he- has any means of doing so; but these might be lost by the delay which would arise from an unnecessary suit.
The answer to the second branch of the ■objection is two fold, 1. That the discontinuance of the joint suit was the act of the counsel, proceeding upon the - ground that the action' was misconceived; and it would have been absurd and improper in his clients to have undertaken to control his judgment, as the law supposed him to be more skilful than themselves, and any ill consequence that might have followed from the intromission would have been justly imputable to them. 2. That it would have been useless to have continued the suit after it was discovered that it could not be maintained. On the contrary, I think, that whatever will excuse the omission to bring a suit-, will justify a discontinuance of one that has been brought. When, therefore, it appeared, that nothing could be obtained from the prosecution of the joint action,.it was very properly abandoned.
The argument, that, if the first suit had been rightly brought, the bail might, perhaps, have been fixed, does not weigh a feather with me. For, in that case, bail might not have been given; or, if given, the principals might have been surrendered, and left to swear out upon the committitur, as they had done upon the execution mentioned in the verdict.
In short the appellants appear to me to have been guilty of no improvident delay; and therefore I am of opinion, that the judgment of the district court ought to be reversed, and that of the county court affirmed.
. ^CARRINGTON-, Judge.
The court, in the case of Mackie v. Davis, did not establish what was to be considered as due diligence, but left it to be decided by the jury upon circumstances. A suit- and execution, with'a return of nulla bona are prima facie evidence of insolvency; -but it may be ascertained by other means: and even that return is not conclusive, as, in sorhe cases, a ca. sa. might be more effec *893 tual; and whenever that appears, it should be resorted to; for the assignee ought to do all, that it is presumable the assignor himself would have done. It does not follow, that because Bowne & Co. were insolvent in March 1796, an early suit might not have produced satisfaction of the debt. A joint suit indeed was commenced against the makers and endorser in September; but it was afterwards abandoned as misconceived, and therefore cannot be regarded as a suit in the sense required in such cases. If however that action had been brought against the makers only, and prosecuted to judgment and execution, the money might possibly have been made out of their effects, or the bail might have been fixed. And, if all this was not attempted, it was the fault of the assignees, and not of Scott. I am therefore of opinion, that the judgment of the district court ought to be affirmed.
LYONS, President.
The only question in this case, as it appears to me is, Whether the assignees of the note could resort to the assignor, before an ineffectual execution against the makers, although it is certain that they were insolvent, and that nothing could have been obtained from them by a suit?
That the assignor warrants, that the debt is due, and the debtor solvent, was decided in the case of Mackie v. Davis, 2 Wash. 219; but I was then of opinion, that, as to solvency, the warranty extended toa reasonable time ; that the assignee was responsible for gross negligence only, to be determined, by the jury, upon all the. circumstances of the case; and that, ,as hd was only in the nature of agent or ^'attorney to the assignor, for whose accommodation, and not for Ips own, he took the assignment, Kyd’s Bills, 32, he was not bound to sue immediately, but might exercise an honest discretion according to the aspect of things; which opinion I still retain, expressed it in Barksdale v. Fenwick, and am confirmed in it by reflection, and the reasoning of the english judges on similar occasions, as in Hill v. Lewis, 1 Salk. 132, and Manwaring v. Harrison, 1 Stra. 508. In the first of which lord Holt lays it down, that the assignment of an inland bill, is intended to have been made upon an agreement, that the endorsee would receive the money from the maker, if he could; but, if from any just cause he could not, as if the drawer should be , insolvent, could not be found, or should refuse to pay, that then the endorser would answer it to him; and that the endorser is never discharged, without actual payment, unless there be some neglect or default on the part of the endorsee, in not endeavour-ing to receive the contents of the paper in convenient time, according to usage, and the circumstances of the case. And, in the other, chi'ef justice Pratt instructed the jury, that the assignment of the note, which in that country had been lately put upon the footing of an inland bill of exchange, was not payment, unless the as-signee made it so, by neglecting to, receive the money in a reasonable time; and what that was, he left it to them to decide, observing however that the assignor had kept the note eleven days, and probably would not have demanded the money himself, sooner than the assignee did, as the maker was in full credit, during all the time. Thus putting it upon the circumstances, percisely in the same manner as lord Holt had done in the other case. But, if that be the rule with regard to a bill of exchange, which is entirely mercantile, and by the custom of merchants requires the utmost promptitude, the argument is ,a fortiori, with respect to the assignment of a note or bond with ,us, where from the nature of the security, and the habits and usages of the country, the same punctuality on the part of the debtor is not anticipated, nor the same rapidity, in enforcing payment, expected from the assignee.
'x'Under this view of the subject, can it be maintained, that the en-dorsee of a note, or bond, is bound to sue a debtor, who is insolvent at the time of the assignment, and without any prospect of ever being able to pay any thing? What benefit could result from it to the assignor? And what other effect would it produce than delay? Which would often prove inconvenient to the assignor himself; 'who might, if early resort had been had to him, have pursued means, then in his power, to secure himself, but which might be lost by the delay incident to a suit.
To return to the comparison between the assignment of an inland bill, and a note. Such a bill did not require a protest at common law, but since the statute, it should be protested, and notice of the protest given in a reasonable time to the drawer, in order to entitle the holder to interest or damages. If however the protest be omitted, and notice be given of the nonpayment, the holder will not lose his recourse to the assignor for the original debt, unless it was lost by culpable' delay, and then to the amount, only, of the loss actually sustained. 2 Ld. Eaym. 993. Upon the same principle, if a bond or a promissory note be assigned ; and there be gross negligence in the assignee, the assignor is entitled to a discount to the amount only of the loss sustained by it: but if there be no loss, he is entitled to no discount at all: and the negligence and loss ought both to be decided by the jury, and not by the court.
Apply the foregoing reasoning to the case now under consideration. What injury could the assignor possibly have sustained by the failure to bring the suit: when the debtors were probably insolvent at the time of the assignment; but certainly so before the note fell due, as thirty-eight protests for nonpayment had been made against them ; a committee appointed to inspect their affairs; and the jury have found that before the month of March they were bankrupt, and had taken the oath of insolvency? It would be a mere waste of time to discuss the question ; for it is manifest, at the first glance, that the makers were utterly unable to pay.
*'The assignor has less reason to' complain in the present case ; because he probably knew of the declining circumstances of the makers of the note at the time of the assignment, but did not impart it to the assignees as he ought to have done, Holt’s Rep. 121; and when applied to *894 in September by the appellants, he left all to their discretion; which they do not appear to me to have abused: for the note was immediately protested, and a joint action brought against the makers and endorser; which, at least, was notice, and no despatch could have rendered that, or any other, suit effectual.
It was said however that the joint suit was misconceived; and therefore that it is the same as if no suit at all had been brought. If that were true, it would make no difference according to my view of the case; because I think no suit was necessary under the circumstances. But admit it to be otherwise; and no consequence, fatal to the appellants, will follow from it: for they had done all that was necessary, when they delivered the note to a licensed attorney to bring suit upon it; and, if he was ignorant, or committed a mistake, it was the fault of the law which had declared him fit, and constituted him an officer of the court to bring actions, and not of the appellants who confided in the declaration and appointment.
To conclude: The question in all such cases is, Whether the assignor has been injured by the gross negligence of the as-signee? And it should be left to the jury to determine it, upon all the circumstances of the case. Consequently the special verdict, on the present occasion, ought not to have been received, without an express decision of that question by the jury. Manwaring v. Harrison, 1 Stra. 508. I am therefore of opinion, that both judgments should be reversed; the verdict set aside; and a new trial awarded, with an instruction, that it is to be left to the jury to decide, upon the circumstances, whether there was gross negligence or not. But, as a majority of the judges think otherwise, the judgment of the district court is to be affirmed.